Thank you, Your Honor. May it please the Court, this is Katherine Veloy for the appellate Felix Mendelson. I'd like to reserve three minutes for rebuttal. Your Honor, we're here today because Mr. Mendelson trusted the county, and yet the county now wants to fault him for doing so, arguing that Mendelson should have known better than to follow its takings analysis procedure. But the county should be held to its word, and Mr. Mendelson's takings claim held to be ripe, under the Supreme Court's relatively modest ripeness standard, because the county has made clear, to a reasonable degree of certainty, via its silence, that Mr. Mendelson would never be able to develop his riparian zoned lot. So I'm having a hard time trying to understand that, because how was it that Mr. Mendelson gave them an opportunity to respond, and how was it that he received a definitive answer that he was not allowed? Your Honor, under the county's own website, which it holds out, smcgov.org, the website states that any intention to proceed with an application for development that would run counter to the LCP residential ban, any individual must first be thoroughly reviewed by the county development director. Was that in your complaint? Yes, Your Honor. Okay. It was. And it's listed in the complaint on paragraph 18, 2930, and then it's discussed in the district court in the plaintiff's opposition to motion to dismiss on page 10, 14 and 15. In your request, I guess, what was it that you plead in your complaint that Mr. Mendelson did, in terms of who did they send the request to, what was said, any of those details to indicate that this was a request and that they didn't respond? Your Honor, we're here on notice pleading, and Mr. Mendelson says on paragraph 29, page 8, that he requested a takings analysis through the county's alternative procedure. This is the procedure that the county listed on its website. I'm sorry, but you said that you mentioned the website in your complaint, but I'm looking at those paragraphs, and I don't think you mentioned the website. It doesn't say the website, Your Honor. That word is not used, but it discusses the alternative procedure, the takings analysis, which is the website in this case. I mean, how do we know that? It's so vague. How do we have any idea that that was referring to this statement on the website? Well, Your Honor, that's the only alternative takings analysis that exists. The CDP has no opportunity or any example to actually seek a takings exception. This analysis the government holds out on its website is the only option that an individual has to actually get one. How can we consider that even now on appeal, given that that's not in the complaint and it seems to be a critical sort of avenue or fact for purposes of the argument that you're making today? Well, again, Your Honor, this is a notice pleading, and he mentions this takings analysis in the light most favorable to Mr. Mendelson. You're right. It's a notice standard, but as Judge Friedland pointed out, I'm also looking at paragraphs 29 and 30 of the complaint at ER 210, and I see no mention of the website. The word website is not used. The takings analysis through the county's alternative procedure is the reference to the website. Can you point me to where it says the county's alternative? And do you describe that alternative procedure? We do, Your Honor. They describe the alternative procedure in detail in the actual opposition to the defendant's motion to dismiss. But in paragraph 29 No, no, no. In your complaint? In the complaint, it discusses that the alternative procedure, it says, submitted the request to the county First of all, tell me where. In paragraph 29 and 30, there is the discussion that Mendelson submitted the request to the county staff to perform a takings analysis. The request represented an opportunity for the county pursuant to a procedure it created and made available to the public to assess whether and the extent to which slots four through seven could be developed. He then goes on to say in paragraph 30 that he tried repeatedly to obtain this analysis over the following six months. He can, we can get additional information when discovery is completed in this case to actually how that was done. But so you need discovery usually when you need to ask the other side something, but it's in your client's possession what he did. I mean, if he sent an email, he could describe the email. If he sent a call, he made a call, he could describe the call. We don't have any idea what he did really. Except submitted a request. That's the word in the complaint. Yes, submitted a request. Submitted a request. Was that a conversation, counsel? Your Honor. Was that a phone call, counsel? Your Honor. What was it? It doesn't go into detail as to whether or not it actually was done, but we're confident that discovery will show a substantial indication of what he actually went through in this case. But can you explain why you need discovery to find out from your own client what he did? Your Honor, on this notice pleading standard, what we're asking is that the county, that for a reasonable degree of certainty, that he be allowed to go into this additional information. So I think the difficulty that we're having with this argument that you're making is that typically you would file an application for a permit that would be denied, that could result in a claim that your client could bring to challenge the denial. Absent the filing of an application, you're arguing that there is some alternative procedure that the county itself has offered or made available, and it's that argument that has no support that we can find in the record. So if there is, because all of this relates to a ripeness issue, which is if you haven't actually made an application that has been denied, we have to know whether or not there was a legitimate alternative procedure, would you keep saying that that language, that allegation, that's a threshold allegation that the county made an alternative procedure available to the public, that your client utilized that procedure and still was not given the analysis that he was requesting? That's correct, Your Honor. And in the light most favorable to Mr. Mendelson, the term takings analysis that he submitted the request should be viewed as enough to get past notice pleading. But even if it wasn't, then we would ask if this court allow us to amend the complaint to simply put the word website in, to explain what he did in more detail. But under this notice pleading standard... So I didn't see you ask or explain what you would amend with. Are you now today telling us what you could amend with to make this clearer? Your Honor, we could amend by inputting exactly what Mr. Mendelson did for the website procedure, who he contacted, additional information. And what would that say? Sorry that there's a bug. I'm not sure what's happening with that. Your Honor, it would go into more detail about... You can take a minute, Counsel. ...who he contacted. But Your Honor, the fact is that the county has held out this procedure, has included obligatory language, must first go through it. And this is the only procedure available. Well, that is definitely not true. The procedure available is to file a regular application and there's clear procedures for that. There is an application for a CDP, but not to get a takings exception to 310. There is no information. The county has no form, no worksheet, nothing to seek an exception to 310. But, okay, so how do you deal with California law and McAllister? Because California law says very clearly that the county either has to grant this thing or, like, figure out a way to give you an exception so that they don't have to pay a takings claim. And McAllister says that, and you don't deal with McAllister in your brief, as far as I can tell. So it seems like California has said that when you make this kind of application, there may be an exception because otherwise they have this problem under the McAllister case. Your Honor, that's correct that McAllister does say that. And potentially, I mean, we assume in our brief, even for that, we include a footnote saying that even assuming that, why would Mr. Mendelson in this case have to actually go through that procedure? But even assuming that — Well, okay, you might not like the procedure, but that's an entirely different kind of claim. Like, you're claiming you did the procedure and got a denial, and it doesn't seem like you did the procedure. Your Honor, but the procedure here for the CDP application, it specifically says what needs to be included. In that inclusion, there is no mention of seeking a 310 exception. There's nothing. There's no website — or, I'm sorry, there is a website, but there's no form, there's no worksheet. Is Mr. Mendelson simply supposed to do a takings analysis and append it to the end of the CDP application? There's nothing. Well, doesn't California law under McAllister say that basically the county has to do it itself because it's not allowed to — it has to figure out how to help him or try to avoid paying a takings claim? It says that it has to do something, but it doesn't go into detail about how Mr. Mendelson is supposed to provide this necessary information that the county says it needs. And in the county's brief, they say that multiple times. Mr. Mendelson just needs to provide the necessary information and we would give him an answer. But there's no way to provide it according to the county's own CDP application. There's no way to seek a 310 exception. What information does he need to provide to prove a taking? Doesn't the county have some duty to show how to take a 310 exception? And in this case, when Mr. Mendelson found nothing, he turns to the county's website — not BuzzFeed, not WikiHow, but the county's website. Before — I mean, you only get the takings claim if they deny the application. How does he have any idea that when he gives them the information about the land and the water and the plants or whatever, that they're not going to say, fine, build what you want? How does he have any idea they're not going to do that? Your Honor, again, how is he supposed to give them this information? Well, he fills out the application. The application has no way to seek a 310 exception. But he only needs the exception if he doesn't get granted the development permit. And he might get granted the development permit. The 310 exception is needed — that's what McAllister discusses, is whether or not they have the authority to grant the 310 exception. But that's needed for any LCP here, because he is in the riparian corridor. Well, I'm not even sure we know that, because the map says this stuff about, like, the boundaries are unclear and we need the specifics about your land. Well, he has alleged that his property is fully covered by riparian vegetation, paragraph 22, and that his property is fully within the riparian corridor, paragraph 23. And, Your Honor, in case this affirmative requirement that the county has created for itself — Is that a bee? I don't know what it is. It's big. I'm wondering if maybe we should just pause for a second. Yeah, maybe we should pause. There's some kind of bug flying around. I don't know if there's something we can do. I would be distracted, too, if there was a bee flying around. Is there anything we can — sorry? If the bee don't drop, let this place walk at it. Yeah, maybe if you go back to the table, we can do something about the bee. Or I don't even know if it's a bee. It might be a fly. Is it a bee? I don't know. That's a first. I think it's a first for me, as well. Did it follow you, or is it still at the puzzle? Oh, no, it's over here. It's just a fly. It's just a fly. It's more just the buzzing in the face that's like — I'm sorry that this happened. I'm not sure where this bug came from. Have we gotten rid of it? Oh, they're fine. Well, as you get the bug out of the way,  I just want to — you said this in passing, but I just want to be clear. You would be in agreement to send it back for amendment. Is that what your argument would be? Your Honor, we don't believe — Can we restart the time again? I'm sorry. Thank you. Thank you, Your Honor. We don't believe amendment is necessary on this notice pleading standard, but if the court believes it is, we would go back and amend our complaint to include those specific allegations. But, Your Honor, again — So I don't — usually you ask — you say something about asking for a leave to amend. I don't believe you did that here, but if you'd like to do that today, could you — it would be helpful to me to hear a little bit more about what you would say in an amendment so I can figure out if it would actually solve this problem. Your Honor, we would just include the specific information for how Mr. Mendelsohn asked who he contacted. And could you tell me what that would be? I cannot tell you what that would be right now. I would speak with him about the specifics to include in this case. Beyond — beyond what he — the specifics of his request, would you be amending the complaint to include specific details about an alternative procedure that was offered by the county for the specific takings analysis that you claim the county should have provided absent an application? We would simply include the word website because it is on the website, and it is to this day. I checked last night. This is still held out as a procedure on the smcgov.org that an individual to — who wants to proceed with a CDP application must first have it — must first be thoroughly reviewed by the county. But you would — you would include additional information like who — what was the website you sent it to, which — when did that occur, the period of time that you waited. There was information in your complaint indicated that for the next six months there — that there are several attempts, but no specific indication of who they spoke to, what they did. None of that was in the complaint. It was just a general notion. There's no specificity for who he contacted and all of — and specifically when. But it does say that he made repeated attempts to get an analysis and to get a response over the three — over the last six months. Do you have any authority that says — that says that this period of silence is — is a final decision? In other words, this notion of silence being a final decision? Your Honor, there are many cases that say — including Environmental Defense Fund v. Harden 428 F2D 1093 — Saying what? — that says that when administrative inaction has precisely the same impact on the rights of the party as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than the form of denying relief. That's essentially what the county has done here. It's decided to say nothing to Mr. Mendelson. No smoke signal, no e-mail. It could have sent him a five-second call telling him, go ahead and do the formal CDP application. Just append your takings analysis to the end of it. But it did nothing. And silence in this case is — should presumptively be a no. It's certainly not a yes. I don't know any case that has said that silence should be construed as a yes. Go ahead. Do what you want to do. I'm going to ask your counsel on the other side about the website. But can you give me the actual website that you're relying on? Yes, Your Honor. It is included. It is https.smcgov.org slash planning slash San Mateo County Montecito Riparian Corridor. Can you say that again a little slower? I'm sorry. Yes. It is https.smcgov.org backslash planning backslash San Mateo County Montecito Riparian Corridor. And that website can specifically be found on — in our opening brief on page 4, footnote 3. Thank you. And I'd reserve the rest of my time, Your Honor. We'll give you some extra time because — we'll plan to give you three minutes to make up for this fly. Sorry. Good morning, Your Honors. Lauren Carroll, Deputy County Attorney for Defendant Apellee County of San Mateo. I hesitate to get too much into this discussion of the website because, as Your Honors pointed out, it was not alleged in the complaint. The complaint alleges — So why wouldn't we just let them — let them go?                       amend it? Because, Your Honor, amending the complaint would not cure the ultimate problem, which is that Mr. Mendelson has not received a final decision from the county. This website — Well, do you have any record of this informal request? Does the county have any record of this informal request? I have some information about what happened. It's outside the record, and I'd be happy to share what I know if —  My understanding is that Mr. Mendelson went to the planning counter and filled out a paper form that requested a takings analysis. I'm not sure how much information was in there, but whatever was included on this paper form was much less than what would be required for the county to reach a final decision because it did not include any of the information that is — that is necessary to evaluate a development proposal, which is what the county needs in order to reach a final decision. And then what happened with the paper form? I'm not sure, Your Honor. I honestly don't know, Your Honor, why the county didn't respond. But Mr. Mendelson — But why can't they then say that's a final decision? That's a final decision. They didn't do anything. This inactivity was enough. And under PACTEL, we're fine. You know, we should be allowed to go forward. Your Honor, it's not a final decision because the county is under no obligation to respond to this request for what Mr. Mendelson calls a takings analysis. But what is a person supposed to do? They go to county. This happens all the time. People go to government agencies. They submit what is in their website purportedly, and there's nothing. There's silence. And what is someone supposed to do in that circumstance? I want to clarify a misconception, Your Honor. This website does not make any reference to something called a takings analysis. The language on the website, which was not in the complaint and was not presented to the court until this appeal, says, Any intention to proceed with an application for development that would run counter to any of those policies, referring to the LCPs, must first be thoroughly reviewed by the community development director and county council. This is nothing more than a truism. If you go and look at the county zoning regulations, it invites members of the public who are interested in applying for a development permit to have a pre-application conference with the planning director. And in the application process itself, there's a lengthy period of time where the planning director is reviewing the proposal. And even then, in the zoning regulations for this pre-application conference, it's still necessary for the county to have some information about what this potential development is going to look at. And the language that you're citing on the website still refers to an application. It says, Any intention to proceed with an application for development that would run counter to those policies must first be thoroughly reviewed by the community development director. So what you're saying is the requirement for an application is not changed. There's not an alternative procedure for getting a takings analysis. You have to file the application. You may be able to, if it's going to run afoul of the policies, you can speak to somebody about whatever your application is going to say, but it doesn't somehow negate the requirement of an application. That is precisely right, Your Honor. Nothing in this language on the county website suggests that this is an alternative procedure by which a potential developer can just bypass the county's typical application processes. So I think that's probably the better reading of this website, what you just said and what I just said. But I don't think it's that clear. I mean, I do think it is possible, and they're making an argument, that you could read it and think there's something you're supposed to do to go to the development director and county counsel. So let's just for a moment assume this is ambiguous somehow. When he tries to give this paper form, why isn't there some obligation on the county's part to clarify what the process is for him? Like, he's done something that's the wrong process, according to you, or an irrelevant process. Why isn't there some obligation to say, that was wrong, you're supposed to do this application? Again, Your Honor, I'm speculating a little bit here because I don't know exactly why the county didn't respond. I don't know who Mr. Mendelson's request was forwarded to and who was perhaps the correct person to receive that. But what we know from the complaint is that Mr. Mendelson requested a takings analysis. There's nothing in the county's regulations or on the website that suggests that this somewhat preliminary or early stage review by the community development director or the Again, I'm speculating, but I'm not sure what in that request would set a lightbulb off in the minds of planning staff that, oh, Mr. Mendelson wants to develop his property, let's start to tell him how to engage in the development process. And there's no evidence in the record from the complaint or otherwise that Mr. Mendelson ever reached out and said, hey, I want to develop my property, can we talk about it or asked about it in any different way. Well, let's say that we allowed for amendment. I'm not suggesting that that's what we do, but let's say that we allowed for amendment and they included, well, on this date I went in and I filled out this paperwork, I included this information, I gave it to said person, and I then followed up the next six months with this person on this date, this person on this date, this person on this date, and I received nothing. Would that satisfy the issues that are raised in this complaint? I think, Your Honor, it would depend on exactly what was provided and what was requested. I guess in a rare circumstance, I can imagine a scenario where enough time has passed and enough effort has been made by the plaintiff at which silence from the county would maybe satisfy Pactel and be considered de facto finality. But if you look at the decades of case law on the final decision rule, there is not a single case that Ms. Valoi has cited that shows an example of somebody being able to establish finality before they have received a final decision on a development application. How can it be de facto finality in this case if the request is for a takings analysis but the application is for development? So we would have under Pactel a de facto finality if there had been a request to develop. Say he submitted a paper form that said, I'd like to develop my property, and then enough time passes where the county provides no response whatsoever. Perhaps that reaches the threshold for finality. But if a paper form is filed on a completely separate request, I think that's what you're saying, which is nobody at the county would have any idea that the request for a takings analysis is the equivalent of filing an application for development. I think that's exactly right, Your Honor. So as I said to Judge Mendoza, I can imagine a scenario perhaps in which a local agency's silence in response to repeated attempts to get an answer could be an answer to what? To a development application and to a proposal to develop, perhaps reaching out to get this pre-development conference that's provided for in the zoning regulations. But that is simply not the case here. In this case, I do not believe, based on my understanding of what has happened in this case and the allegations in the complaint, I don't believe there's any way that Mr. Mendelson could amend his complaint that could make this case right. Because — So let me ask a different version of the question I think Judge Mendoza is asking, which is, and I think you answered, what if the plaintiff had an opportunity to amend? But should we even consider at this stage the request for an amendment? Has there been a waiver? It was not requested below, and it wasn't even raised, as I understand, in the opening brief. No, Your Honor. In that regard, the Court should not consider a request to amend. And I don't believe that Mr. Mendelson has alleged that amendment would be fruitful. I believe that Mr. Mendelson has alleged that what is in the complaint is sufficient, and that this is more of a legal argument rather than a factual argument. I also want to emphasize the importance of filing a full development application in this case to further underscore why there is no way that Mr. Mendelson could amend this complaint to create a final decision. At this stage, we do not know even whether, to what extent, these regulations might apply. Mr. Mendelson alleges that the property is covered in riparian vegetation, but the LCP regulations say there's a specific amount, at least 50 percent of riparian vegetation create a riparian corridor. And it says on the map that Mr. Mendelson cites, on the website that's now part of this discussion and in the regulations themselves, that biological surveys, boundary studies, all of this detailed information is necessary in order to first determine whether the riparian corridor is on Mr. Mendelson's property and how much of the property is covered in the riparian corridor. And that's also necessary for the government, if necessary, to engage in this discretionary analysis under Section 310, because without that information about exactly what's on the property, the government is unable to determine, let's say, it is hard to develop on this property under the regulations. Perhaps there's something we can do to situate the proposed development on the property in a way that would have less of an impact on the riparian corridor, and the county could exercise its discretion under Section 310. But it simply cannot do that without Mr. Mendelson submitting a full development application, which he has yet to do. Can I ask, so this case had an earlier appeal that was then remanded, and in the oral argument in the earlier appeal, there were a bunch of questions about an informal process, and it seemed, I don't, I actually don't remember if it was you or It was, Your Honor. So the county was, it seemed to be acknowledging that there was an informal process in answer to the questions from the previous panel. What informal process were you talking about? To be honest, Your Honor, I haven't gone back and rewatched, and it's, my memory's a little fuzzy, but what I think I was trying to say is that in the, in this, you discussed with Ms. Villoy, the concept that the county can conduct this takings analysis, but that's, and that's, that's Mr. Mendelson's words, but can conduct a legal analysis in consultation with county counsel about whether a taking might occur if development were to be prohibited. So it might be, I might have been discussing that, and maybe informal's not the right word for that. However, and this might get us to the related case, Raulston. I mean, I think their brief, like, was quoting that oral argument. So in their brief, they talk about this informal process that the county acknowledged existed in the last appeal. So you don't remember thinking about what they meant? Your Honor, I think it's possible that I was referring to the, the county does occasionally engage in less formal conversations with potential applicants in order to help them navigate the application process. And I think that's what that's referring to. And this might tie us back to the Raulston case, the related case here in which the planning director did engage in some email conversations with a potential developer about the process of applying for a development permit. I don't want to hold myself too closely to what I said in the prior oral argument, but I think that stands, that the county does endeavor to assist applicants to help them navigate the process because these regulations are complicated and they are pretty strict. And so the county wants to do what it can to help get people through that process. But ultimately, it can't do that and get to a final decision if it doesn't have any information about the property. And in the Raulston case, those sort of informal communications between the planning director and the potential developer were found not to be a final decision because that's exactly what they were. They were informal. They were preliminary. That's an unpublished decision, though, so we can't really make much of it, right? Your Honor, you can't cite it as binding authority, but it is quite persuasive. The facts are quite similar to this case, and the only difference is that there were some communications between the planning director and the developer in that case. And so the developer actually had something to point to that said this could be a final decision. The court disagreed. Here, there's not even that much. So the facts in this case are stronger for finding that this case is unripe than Raulston. And as the district court found in this case, even though Raulston was unpublished, the analysis in Raulston applies equally to this case. Well, if the court doesn't have any further questions, I'll just wrap up briefly by saying that if the court were to allow this case to go forward at this stage, which would go against decades of case law on the final decision rule and the court's most recent decisions on this topic, that would require the district court to go into or put itself in the county's shoes and speculate as to how the county might have responded to a hypothetical development proposal and eliminate the county's inherent and legally authorized discretion to determine whether and to what extent Mr. Mendelson could develop this property. And the court correctly or the district court correctly concluded that this case was unripe and this court should affirm. Thank you. Thank you. Let's give, I think I said three minutes to rebuttal. Thank you, Your Honor. The county discusses and says that this website requirement is actually a truism. But the county is the one who wrote it. The county is the one who included it on the website. And the county, as you correctly noted in the earlier iteration at the prior panel, holds this out as a process that Well, it doesn't hold out the website. I couldn't find any discussion of the website in the prior oral argument. It just talked about informal process. Informal process. But in the discussion when they're talking about, and Judge Bumate actually says, do you have a requirement to actually answer them? The county is the one that holds out and says, no, they have no requirement to say anything. They're clearly talking about the website in this case. I didn't think it was obvious they were talking about the website. I didn't see anyone mention the website. I don't know what they were talking about. I mean, they did. I mean, the quote on page nine of your brief is the county saying it's an informal process. It hasn't been used often, as far as I know, once at most. I mean, I have no idea what that was. Well, Your Honor, in context, what they're talking about is the website and this procedure that was used. It's the whole reason why the case was actually remanded to discuss PACTEL in this situation as to whether or not Mr. Mendelson's going through this informal, informal their word process is enough to trigger a taking. And in light of PACTEL, and especially in light of Palazzolo, in the reasonable degree of certainty standard, that's all that is required here, a reasonable degree of certainty as to whether or not the case is right, that silence in the face of this duty to answer that they themselves have created through their own wording must first seek this proposal before actually moving ahead with an application, that silence should be construed as a no. And on a no-displeading standard, when he discusses his repeated attempts, or at least states that he made repeated attempts and that he requested this analysis and then goes into further detail in the actual opposition to the defendant's motion to dismiss, again on pages 14 and 15 of that brief, actually discusses the fact that this is a procedure that the county created in an effort to avoid... Can you point to where in the ER those pages of the brief are? I'm not sure I'm familiar with them. Yes, Your Honor. It is ER 167 and 168. And what do you think are the relevant details that it adds? Well, it discusses his 2019 application to the county. So it says that the county had instituted this special application process so they can apply for this takings analysis without submitting specific project plans. Upon application, the county renders a determination as to whether and the extent to which the LCP would allow development on the owner's land and, if development is prohibited, whether the prohibition affects a compensable taking. But all of the citations are just to the complaint, so it's actually not adding anything to the complaint, is it? Well, Your Honor, I think it provides context into this procedure that Mr. Mendelson went through. If, again, if the court... I mean, it doesn't say... Well, I don't know. What detail do you think it adds? Your Honor, I think it adds that he has gone through this procedure. Again, it doesn't say the word... But the word says that, too, right? It does, but it doesn't say the word website. But it elaborates on that he tried to build on these... He sought this formal determination from the county on whether or not the county would allow him to move forward with the application as necessity, says, through the county's own words on the website, any intention to proceed with an application for development must first be thoroughly reviewed by these two individuals. The two individuals who would do the reviewing... That's not in the brief, though. The stuff you're now saying about the two individuals on the website, not in the brief you're talking about. Your Honor, I think it provides context back, again, to the complaint where he mentions this takings analysis. Takings analysis is just another word for the website, the process that the website held out. I see my time has expired. I just briefly ask that this Court reverse and remand for Mr. Mendelson to continue on this relatively modest standard. Thank you, both sides. This case is submitted. The fly's gone. The fly's gone, I'm glad. It was up here for a little while.
judges: FRIEDLAND, MENDOZA, DESAI